IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

97 NOV 28 AM 11: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAVID E. CRAVENS, ET AL., }
}
    Plaintiffs }
}
vs. }
}
AETNA LIFE INSURANCE AND }
ANNUITY COMPANY, ET AL., }
}
    Defendants }

CIVIL ACTION NO.

97-AR-2568-E

**ENTERED**

NOV 2 8 1997

### MEMORANDUM OPINION

The court has for consideration a supplemented motion by plaintiffs, David E. Cravens and William R. Hamilton, Jr., to remand their above-entitled case to the Circuit Court of Talladega County, Alabama, from whence it was removed by defendant, Aetna Life Insurance and Annuity Company ("Aetna"), upon an allegation of ERISA preemption. The other defendant, Steven J. Seibert ("Seibert"), did not join in the removal, and according to the materials filed by Aetna in opposition to plaintiffs' motion to remand, all claims against Seibert are claims brought under state law and are not subject to ERISA preemption. Seibert does not contest this contention. If the claims against Seibert had been ERISA claims, it would have been necessary for him to join in the notice of removal for the removal to be effective.

The distinction between the claims against Seibert and those

1

19

against Aetna makes it a simple matter for the court to remand
the case insofar as plaintiffs' claims against Seibert are
concerned.  An order of partial remand will therefore be entered
pursuant to 28 U.S.C. §§ 1441(c) and 1447(c).  By using the word
"partial," the court telegraphs its decision to deny plaintiffs'
motion to remand as against Aetna.

Aetna virtually admits its intention to tow this case into
the federal harbor only for the purpose of scuttling it with the
"super-duper" ERISA preemption that wipes out all state claims
because they are "related to" an ERISA plan, leaving nothing to
fight about.  This court has long lamented the concept of "super-
duper" preemption, an idea that runs counter to the avowed
purpose of ERISA, namely, to protect employees and plan
beneficiaries.  Concluding that there is no reason to invite
reversal, this court has strategically retreated, if not
surrendered.

On October 20, 1997, the First Circuit examined the question
of ERISA preemption in *Turner v. Fallon Community Health Plan,
Inc.*, 1997 WL 633699 (1st Cir.), and it concluded that a serious
ERISA problem and a regime of unfairness has been created, either
by Congress or by the courts, or both.[1]

---

[1]   The *Turner* court observed:

The lack of an express damage remedy under ERISA does not necessarily end
the story.  The federal courts have regularly inferred or created remedies in the
shadow of federal statutes, although the practice has waned somewhat in recent

2

years. See, e.g., Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). But the Supreme Court has adamantly ruled that ERISA's express remedies are a signal to courts not to create additional remedies of their own. Russell, 473 U.S. at 145- 48. See also Reich v. Rowe, 20 F.3d 25, 31-33 (1st Cir.1994); Drinkwater, 846 F.2d at 824.

In the alternative, Ronald Turner argues that ERISA, if it provides no damage remedy of its own either expressly or by implication, should at least not be taken to preclude existing state remedies. Absent preemption, a health benefits plan like Fallon's could certainly be treated as a contract enforceable under state law and subject to the usual contractual remedies, including compensatory damages. Depending on the jurisdiction, state law might provide even more substantial relief, including punitive damages.

ERISA contains a vague but broadly worded preemption provision. With exceptions not relevant here, it provides that the pertinent subchapter of ERISA shall supersede any and all "State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. s 1144(a). However this general language might otherwise have been read, the Supreme Court has construed it to preclude state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and this construction has been repeatedly followed. (Footnote omitted).

The Supreme Court has recently set some new limits on preemption by holding that certain state laws were not sufficiently "related" to ERISA to deserve preemption. See De Buono v. NYSA-ILA Medical & Clinical Servs. Fund, --- U.S. ----, ---- - ----, 117 S.Ct. 1747, 1752-53, 138 L.Ed.2d 21 (1997); California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., --- U.S. ----, ----, 117 S.Ct. 832, 842, 136 L.Ed.2d 791 (1997). But neither of these cases involved a state's attempt to provide state remedies for what is in essence a plan administrator's refusal to pay allegedly promised benefits. It would be difficult to think of a state law that "relates" more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan.

Ronald Turner more or less admits that existing Supreme Court precedent is against him, both as to an implicit federal cause of action and the preemption of state claims. But he says that it is grossly unjust to deny any remedy, either state or federal, to compensate in damages the victim, family or estate of one who has been wrongfully denied promised health-care benefits. Further, he argues that this gap provides a cruel incentive for plan administrators to withhold treatment or delay it as long as possible, since the claim for benefits may be mooted by the beneficiary's death.

There are in reality two quite different problems of law and policy entangled in this argument. The one that Ronald Turner seeks to present is the case of a beneficiary wrongfully denied promised benefits. There is reason to doubt that that is the true problem in this case (a point to which we will return), but such cases are easy to imagine and certain to occur. Compensatory damages are a conventional and potent remedy that might indeed deter misconduct and mitigate loss, although the cost of the plan would also be increased.

On the other hand, some might think it perverse to dwell on damage remedies, which apply where the patient has died or already suffered injury, and might urge instead that courts improve access to equitable relief. This remedy, already available under ERISA, can address a wrongful denial of benefits while the patient is still alive and unharmed. Although Ronald Turner says that such judicial relief is readily frustrated by exhaustion of remedies rules, a failure to exhaust is easily forgiven for good reason, and no reason is better than an imminent threat to life or health. E.g., Portela-Gonzalez v. Secretary of the Navy, 109 F.3d 74, 77 (1st Cir.1997); see also DePina v. General Dynamics Corp.,

3

Judge James Hill of the Eleventh Circuit, sitting by designation
with the First Circuit, put the entire blame on Congress in a
special concurrence, saying:

> Appellant, recognizing that the statutory and case law
> compels the district court's grant of summary judgment to
> appellee, addresses entreaties to us which, if appropriate at all,
> are appropriate to the legislative branch.
>
> Periodic accusations to the contrary notwithstanding, the
> courts are not legislative bodies.

This court agrees with Judge Hill that the courts are not
legislative bodies; nevertheless, it still believes that a fair
amount of the blame for the ERISA travesty goes to the courts.
Although this court finds it hard to accept the idea that ERISA
preemption, if properly construed, should provide total immunity
for overt acts of fraud by plan administrators and insurance
agents, that is where the court finds itself as of the present
moment.

On November 7, 1997, the Eleventh Circuit held in *Franklin
v. QHG of Gadsden, Inc.*, 1997 WL 668089 (11th Cir.):

> Under the "well-pleaded complaint" rule, "[a] case does not
> arise under federal law unless a federal question is presented on
> the face of the plaintiff's complaint." *Id.* The plaintiff is the

---

674 F.Supp. 46, 49 (D.Mass.1987).
　　In all events, it is certainly a matter for reasonable debate whether a
damage remedy should be added, either by judicial interpolation or by Congress.
But only the Supreme Court could alter the existing case law that precludes such
a remedy. And whether or not Congress ever thought about the impact on health
care in particular when it wrote ERISA's remedies and preemption provisions,
Congress is well equipped to revisit the issue and alter the statutory language
that now stands as a bar.

*Turner*, 1997 WL 633699 at *4-5 (1st Cir.) (emphasis supplied).

"master of the claim" and "may avoid federal jurisdiction by
exclusive reliance on state law." *Caterpillar Inc. v. Williams,*
482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).
In *Caterpillar Inc. v. Williams*, the Supreme Court instructed that
the well-pleaded complaint rule is inapplicable under certain
circumstances. *Id.* at 392, 107 S.Ct. at 2429. A defendant may
remove a complaint alleging only state law claims to federal court
if the allegations in the complaint involve an area of law that
Congress has completely preempted. *Id.* "Congress has
accomplished this 'complete preemption' in 29 U.S.C. § 1132(a),
which provides the exclusive cause of action for the recovery of
benefits governed by an ERISA plan. *Kemp,* 109 F.3d at 712.
"<u>ERISA</u> 'completely preempt[s]' the area of employee benefit plans
and <u>thus converts state law claims into federal claims when the</u>
<u>state law claim is preempted by ERISA</u> and also falls within the
scope of the civil enforcement section of ERISA, Section 502(a),
29 U.S.C. § 1132(a)." *Brown v. Connecticut General Life Ins. Co.,*
934 F.2d 1193, 1196 (11th Cir. 1991) (alteration in original)
(quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64,
107 S.Ct. 1542, 1546-47, 95 L.Ed.2d 55 (1987)). "<u>To sum up, the</u>
<u>jurisdictional issue ... turns on whether the plaintiffs are</u>
<u>seeking relief that is available under 29 U.S.C. § 1132(a)</u>."
*Kemp,* 109 F.3d at 712.

(Emphasis supplied).

What did the Eleventh Circuit mean? This court finds it
impossible to reconcile the expressions in *Franklin* with "super-
duper" preemption, but this court's previous attempts to
transmogrify state law claims into ERISA claims as a means of
ameliorating the scuttling effect of ERISA have gotten nowhere,
except, that is, in the Supreme Court of Alabama, a fact that
angers some and causes the most tenuous of ERISA related cases to
be routinely removed from Alabama's state courts to the Alabama
federal courts for prompt burial. This court doubts that
*Franklin* has breathed any life into the moribund idea that a
state law theory can survive as an ERISA remedy.

5

The court will grant Aetna's motions to strike plaintiffs' claims for punitive damages, for a jury trial, and for a protective order.  The court is stumped by Aetna's failure to file a motion to dismiss, and it will expect a motion for summary judgment from Aetna in order to test whether any plaintiffs' claims have any ERISA viability.  This court commends to plaintiffs' attention *Alacare Health Services v. The Prudential Insurance Co.*, 957 F. Supp. 208 (M.D. Ala. 1997), with which this court would like to agree but cannot.  This court also is tempted by *Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997).  But neither case is cited by the Eleventh Circuit or by the Supreme Court.  Plaintiffs' prospects for obtaining relief in this court look dim and grim. But the court will allow discovery on the question of whether this is, in fact and law, an ERISA plan.  *See Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822 (N.D. Ala. 1988).  Of course, if plaintiffs nail Seibert in the state court, they may be happy to leave Aetna alone.  In the unlikely event that the events and documents here involved prove not to "relate to" an ERISA plan, a renewed motion to remand as to Aetna will promptly be granted.

DONE this __28th__ day of November, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE